| | | |
|---|---|---|
| BLOOM GOLF PARTNERS LLC,<br>Plaintiff,<br>v.<br>RACHEL RIDGEWAY,<br>Defendant. | : | No. 4:25-cv-02470-MWB<br>Hon. Matthew W. Brann |

**ORDER**

AND NOW, this __ day of __________, 2026, upon consideration of Plaintiff's Motion for Expedited Discovery and Defendant's Opposition thereto,

**IT IS HEREBY ORDERED** that Plaintiff's Motion is DENIED.

BY THE COURT:

______________________________

Matthew W. Brann

Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BLOOM GOLF PARTNERS LLC, Plaintiff, | : | No. 4:25-cv-02470-MWB |
| v. | : | Hon. Matthew W. Brann |
| RACHEL RIDGEWAY, Defendant. | : | |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

Defendant Rachel Ridgeway opposes Plaintiff Bloom Golf Partners LLC's Motion for Expedited Discovery under Federal Rule of Civil Procedure 26(d)(1). Plaintiff has failed to demonstrate good cause for such relief, as the request is premature, overly broad, unduly burdensome, and predicated on unsubstantiated speculation of ongoing spoliation. The initial demand for inspection and preservation of evidence originated in October 2025, and Defendant has consistently affirmed her commitment to preservation, including through a litigation hold implemented on October 6, 2025, and an offer for neutral forensic examination. On or about October 29, 2025, Counsel for Plaintiff sent a response letter to Counsel for Plaintiff addressing multiple issues, including the spoliation issues. See **Exhibit "A".** In addition, Counsel sent a proposed forensic examination protocol to Counsel for Defendant. See **Exhibit "B".** Defendant would agree to a neutral vendor to conduct the examination, but Plaintiff has refused. See **Exhibit "C".** Moreover, the Complaint remains unaddressed, and Defendant intends to file a motion to dismiss under Rule 12(b)(6) for failure to state a claim, as well as addressing the venue

issue. Defendant Ridgeway contends that the Federal Court in Wilmington Delaware is the appropriate venue.

Pursuant to Third Circuit precedent and Pennsylvania federal court practice, expedited discovery should be denied or stayed pending resolution of the forthcoming dismissal motion. In the alternative, any relief should be narrowly tailored to incorporate a neutral vendor under a mutually agreed protocol, consistent with the draft forensic agreement proposed by Anthony S. Pinnie, Esquire.

## I. Procedural Background

Plaintiff filed the Complaint and this Motion on December 19, 2025, with the Motion docketed on December 22, 2025. The Complaint asserts claims under the Defend Trade Secrets Act, the Computer Fraud and Abuse Act, and various state laws, alleging misappropriation of trade secrets and post-termination data deletion. Plaintiff served waiver of summons materials on December 19, 2025. No Rule 26(f) conference has occurred, and discovery has not commenced.

Prior to litigation, on October 28, 2025, Plaintiff's counsel sent a letter to Defendant demanding identification of deleted or downloaded materials by October 31, 2025, and issuing a formal preservation demand for electronically stored information (ESI). On October 29, 2025, Defendant's counsel responded, categorically denying deletions of proprietary data, affirming implementation of a litigation hold since October 6, 2025 (the date of termination), and offering limited neutral forensic inspection at Plaintiff's expense to confirm no spoliation. The parties subsequently exchanged a draft agreement governing forensic analysis, which proposed mutual

selection of a neutral expert, with Plaintiff bearing costs, to examine designated devices and accounts under strict privacy protections.

Defendant has not yet responded to the Complaint but intends to file a Rule 12(b)(6) motion to dismiss, challenging the legal sufficiency of the claims, including the failure to plausibly allege protectable trade secrets or misappropriation under the Defend Trade Secrets Act, and unauthorized access under the Computer Fraud and Abuse Act post-Van Buren v. United States, 593 U.S. 374 (2021).

## II. Legal Standard

Federal Rule of Civil Procedure 26(d)(1) prohibits discovery prior to the Rule 26(f) conference absent a court order, stipulation, or exemption. Courts in the Third Circuit, including the Middle and Eastern Districts of Pennsylvania, apply a "good cause" or reasonableness standard to requests for expedited discovery, evaluating the entirety of the record, the necessity for expedition, the tailoring of the request, and potential prejudice to the responding party. See Bizzell Corp. v. Tripwire South, LLC, No. 25-cv-680, 2025 WL 2211473, at (M.D. Pa. Aug. 4, 2025); Strike 3 Holdings, LLC v. Doe, No. 24-cv-1642, 2024 WL 4900017, at (M.D. Pa. Nov. 26, 2024); Entertainment Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at (E.D. Pa. Oct. 2, 2003). Good cause requires a showing that the need for expedited discovery outweighs hardship to the defendant, with particular scrutiny where requests are broad or speculative. See Leone v. Towanda Borough, No. 3:12-CV-429, 2012 WL 1123958, at (M.D. Pa. Apr. 4, 2012).

When a Rule 12(b)(6) motion is forthcoming or pending, Third Circuit precedent strongly favors denying or staying discovery. In Mann v. Brenner, 375 F. App'x 232, 239-40 (3d Cir. 2010), the court held that staying discovery is appropriate where a dismissal motion tests legal sufficiency, as discovery would be futile if granted. This principle streamlines litigation by avoiding needless fact-finding on facially deficient claims. See id. (citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989)). Pennsylvania federal courts consistently apply this reasoning, denying expedited discovery where claims may not survive dismissal. See Barbieri v. Wells Fargo & Co., No. 09-2856, 2012 WL 803878, at (E.D. Pa. Mar. 8, 2012) (rejecting discovery pending Rule 12(b)(6) motion). Exceptions are narrow, such as where discovery is tied to a preliminary injunction or involves non-moving defendants. See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC, No. 1:21-CV-00658, 2021 WL 1740109, at (M.D. Pa. May 3, 2021); Feibush v. Johnson, 280 F. Supp. 3d 663, 666 (E.D. Pa. 2017).

## III. Argument

### A. Plaintiff Lacks Good Cause for Expedited Discovery

#### 1. No Imminent Risk of Spoliation Justifies Expedition

Plaintiff's concerns about further spoliation are unfounded, as the first demand for inspection and preservation dates to October 2025. In the October 28, 2025 letter, Plaintiff demanded identification of deleted materials and imposed a comprehensive ESI preservation obligation.

Defendant promptly responded on October 29, 2025, affirming that she implemented a litigation hold on October 6, 2025, preserved all relevant devices (including her cell phone) in their state as of that date, and offered limited neutral forensic inspection to confirm no spoliation. This commitment negates any risk of destruction, rendering expedited discovery unnecessary. See Strike 3 Holdings, 2024 WL 4900017, (good cause absent where no concrete evidence of ongoing harm). Over two months have elapsed without incident, and the parties' draft forensic agreement provides a structured, non-litigious path forward. Plaintiff's delay in seeking court intervention undermines claims of urgency.

2. **Allegations Are Speculative and Limited to Company Systems**

Plaintiff relies on "upon information and belief" assertions that Defendant copied files to personal devices, based solely on a September 30, 2025 download and the laptop reset. However, all alleged deletions occurred on Plaintiff's systems—not Defendant's personal devices. Speculation does not establish good cause for invasive relief. See Contour Data Sols. LLC v. Gridforce Energy Mgmt., LLC, No. 20-3123, 2021 WL 5541787, at (E.D. Pa. Nov. 26, 2021) (denying relief absent concrete evidence). Defendant's October 29 letter denies proprietary deletions, stating only personal files were removed, further supported by her preservation affirmations.

3. **Underlying Claims Are Subject to Dismissal Under Rule 12(b)(6)**

Expedited discovery is unwarranted where the Complaint faces dismissal for legal insufficiency. Defendant intends to file a Rule 12(b)(6) motion, arguing, inter alia, that the

alleged "trade secrets" (e.g., contact lists compilable from public sources) lack protectable status, no plausible misappropriation is alleged beyond conjecture, and the Computer Fraud and Abuse Act claim fails post-Van Buren, as deletions occurred during lingering authorized access. See Van Buren v. United States, 593 U.S. 374, 392 (2021) (CFAA does not cover misuse of permitted access). Pursuant to Mann v. Brenner, 375 F. App'x at 239-40, discovery should be stayed, as Rule 12(b)(6) tests legal sufficiency without factual development, avoiding futile burdens. See also Curran, 2023 WL 7409243; No preliminary injunction is sought, distinguishing this from cases where limited discovery is permitted. See Epsilon Energy, 2021 WL 1740109. Defendant also will contest the venue.

## B. The Requested Relief Is Overly Broad, Prejudicial, and Biased

### 1. Forensic Imaging Is Disproportionate and Invasive

The proposed order requires imaging of all personal devices and accounts, exposing unrelated sensitive data (e.g., financial, health, personal communications) despite search limits to 18 files. This burdens Defendant's privacy without necessity, as less intrusive alternatives exist: her sworn declaration denying possession, the offered neutral inspection, or the draft agreement's tailored protocol. See Schuylkill Valley Sports, Inc. v. Corporate Images Co., No. 20-2332, 2020 WL 3167636, at (E.D. Pa. June 15, 2020) (denying expedited discovery where not narrowly tailored).

2. **Unilateral Vendor Selection Poses Bias Risks**

Permitting Plaintiff's vendor to image and search creates inherent bias and overreach potential. Federal courts favor neutral experts in trade secret disputes. See Ainstein AI, Inc. v. ADAC Plastics, Inc., No. 23-2166-JAR-TJJ, 2023 WL 3568661, (D. Kan. May 19, 2023). The draft agreement aligns with this, proposing mutual selection and privacy safeguards. Cost-shifting further incentivizes adversarial conduct.

C. **Alternative Relief Should Be Narrowly Tailored**

If relief is granted, it should defer to the draft agreement: neutral expert selection, limited to designated devices/accounts used during employment, strict search protocols (e.g., hash-based before review), no cost-shifting, and a protective order sealing images.

**IV. Conclusion**

The Court should deny Plaintiff's Motion in its entirety, as no good cause exists amid prior preservation commitments and a pending Rule 12(b)(6) motion. Alternatively, stay proceedings pending dismissal resolution or modify to adopt a neutral process per the draft agreement.

Respectfully submitted,

<u>**/s/ Anthony S. Pinnie**</u>

Anthony S. Pinnie (No. [Bar Number])
PINNIE LAW OFFICES
334 West Front Street
Media, PA 19063
Ph: 610-892-9200 | Fax: 610-565-5393
apinnie@pinnielaw.com
Attorney for Defendant Rachel Ridgeway

Word Count Certification: This brief contains [under 5,000] words per Local Rule 7.8(b)(2).

Dated: January 5, 2026

PINNIE LAW OFFICES
334 WEST FRONT STREET
MEDIA, PENNSYLVANIA 19063

ANTHONY S. PINNIE, ESQUIRE *+ -

* Admitted in PA
+ Admitted in NJ
- Admitted in DC

Phone: (610) 892-9200
Fax: (610) 565-5393
www.pinnielaw.com web
apinnie@pinnielaw.com email

October 29, 2025

Laura Bailey Gallagher, Esq.

Saxton & Stump, LLC

280 Granite Run Drive, Suite 300 Lancaster, PA 17601

lgallagher@saxtonstump.com

**Re: Rachel Ridgeway / Bloom Golf Partners**

Dear Ms. Gallagher:

This firm represents Rachel Ridgeway and her business, Ridgeway Coaching & Consulting. We write in response to your letters dated October 6, 2025 and October 28, 2025, both of which contain serious allegations unsupported by evidence and mischaracterize Ms. Ridgeway's conduct.

**1. Separation from Bloom Golf Partners**

Ms. Ridgeway acknowledges receipt of your October 6, 2025 letter notifying her of separation. To date, Bloom has provided no employment agreement, handbook, or written policy governing post-separation conduct, confidentiality, or non-competition. Absent such documentation, Bloom's claims of breach are baseless.

DEFENDANT'S EXHIBIT A

PINNIE LAW OFFICES
334 WEST FRONT STREET
MEDIA, PENNSYLVANIA 19063



**2. Return of Company Laptop**

Ms. Ridgeway returned the Bloom-issued laptop via second day delivery on October 7, 2025, to the address specified (Bloom Golf Partners, 127 Cherry Tree Lane, Fort Matilda, PA 16870). We have the signed receipt and it is available upon request.

**3. Allegations of Data Deletion – Categorically Denied**

Your October 28 letter accuses Ms. Ridgeway of deleting "sensitive and proprietary documents" on or after October 6, 2025, in violation of the Computer Fraud and Abuse Act (CFAA) and state law. This allegation is false and the CFAA does not apply to this set of circumstances. Further, we see this veiled threat of criminal referral as an attempt to gain an advantage in any future civil litigation

- Ms. Ridgeway **did not delete** any Bloom-related files, emails, or data. She only deleted her personal files, none of which were sensitive or proprietary. Mr. Bloom is well aware of this fact. She deleted the documents on October 6, 2025 when she was verbally informed that she was discharged.
- She has preserved all other devices (cell phone) in their state as of October 6, 2025.
- Any routine system processes (e.g., cache clearing, email auto-archive) were pre-existing and non-targeted.

**Demand**: Within **five (5) business days**, provide:

1. Specific metadata, logs, or forensic evidence supporting your deletion claim (e.g., file names, deletion timestamps, user IDs).
2. A copy of any IT audit report relied upon.

PINNIE LAW OFFICES
334 WEST FRONT STREET
MEDIA, PENNSYLVANIA 19063



Failure to substantiate this serious accusation will be treated as bad faith.

**4. Preservation of ESI – Fully Complied With**

Ms. Ridgeway has implemented a comprehensive litigation hold since October 6, 2025,

We are prepared to permit limited, neutral forensic inspection under a mutually agreed protocol (*at Bloom's expense*) to confirm no spoliation occurred.

**5. Commission Payment – Wrongfully Withheld**

The Whitford Country Club commission due as of October 24, 2025) was fully earned prior to separation. Your stated basis for withholding — "conduct" and "deletion" — is pretextual and unsupported. It's also a violation of the Pennsylvania Wage Payment and Collections Law.

**Demand**: **Immediate payment** of the commission (net of standard withholdings) within seven (7) days, together with:

- A detailed accounting of all commissions earned in 2025.
- Copies of all relevant commission policies.

Failure to pay will prompt a claim under the Pennsylvania Wage Payment and Collection Law (43 P.S. § 260.1 et seq.), including liquidated damages and attorneys' fees.

**6. Alleged Client Diversion – No Evidence, No Violation**

Ms. Ridgeway did not solicit or divert any Bloom client while employed.

PINNIE LAW OFFICES
334 WEST FRONT STREET
MEDIA, PENNSYLVANIA 19063



Your letter to Innis Arden Golf Club is potentially defamatory and intended to interfere with Ms. Ridgeway's prospective business. Cease all third-party communications about Ms. Ridgeway immediately.

**7. Reservation of Rights**

Ms. Ridgeway reserves all rights, including to:

- Seek declaratory relief clarifying her post-separation rights.
- Pursue claims for unpaid wages, defamation, and tortious interference.
- Move for sanctions if Bloom's CFAA threats are unsubstantiated.

We are open to early, confidential mediation to resolve this matter efficiently. However, continued unsubstantiated threats will be met with vigorous defense and counterclaims.

Very truly yours,

*/s/ Anthony S. Pinnie*

Anthony S. Pinnie, Esquire

AP/ms

## Anthony Pinnie

**From:** Anthony Pinnie <apinnie@schusterlaw.com>
**Sent:** Sunday, December 7, 2025 5:23 PM
**To:** Rory O. Connaughton; Joshua Voss; Laura Gallagher; Anthony S. Pinnie
**Subject:** Forensic Examination
**Attachments:** DRAFT UPDATED FORENSIC AGREEMENT.pdf

See the attached. Very truly yours, Anthony S. Pinnie, Esquire

Anthony S. Pinnie, Esquire
Pinnie Law Offices
334 W. Front St.
Media, Pa. 19063
Office 610-892-9200
Cell 610-348-8242
www.pinnielaw.com
(Sent from my iPhone)

DEFENDANT'S EXHIBIT
B

**Agreement Governing Forensic Analysis**

Bloom Golf Partners ("Bloom") and Rachel Ridgeway ("Ridgeway") (collectively, the "Parties") have agreed to enter into this Agreement Governing Forensic Analysis ("Agreement") to establish protocols for a neutral expert to conduct forensic analysis of hardware, digital storage media, and data in the custody, possession, or control of Ridgeway. The primary objectives are to determine whether Ridgeway has retained, used, or disseminated any confidential or proprietary information belonging to Bloom and to protect Ridgeway's privacy rights, including personal, financial, health, and unrelated business information. This Agreement does not limit the possibility of future litigation or mediation and is entered into solely for the purpose of facilitating early resolution of the Parties' dispute. This Agreement is entered into as of the date of the last signature below.

In consideration of the mutual representations and warranties contained herein, the Parties have stipulated and agreed as follows:

1. **Forensic Provider**. The Parties shall mutually select a neutral computer forensic analysis firm ("Expert") capable of performing the functions identified in this Agreement, such as Deloitte, Kroll, or another reputable firm with experience in employment-related forensic examinations. If the Parties cannot agree on an Expert within seven (7) calendar days of executing this Agreement, each Party shall nominate one candidate, and a neutral third-party mediator shall select from those nominees. Bloom shall bear 100% of the costs of the Expert's services, except that each Party shall bear 100% of the costs associated with any additional searches or analysis requested solely by that Party as permitted under Paragraph 9 of this Agreement. The Expert shall serve as a neutral expert, perform only

the functions set forth in this Agreement, and owe no duty of loyalty to either Party. Following execution of this Agreement, the Expert shall not engage in ex parte contact or communication with any Party regarding the work described herein, nor receive ex parte instructions from any Party.

2. **Designation of Devices and Accounts**. Ridgeway shall make available to the Expert, at a mutually agreed time and location, any personal computers, laptops, tablets, mobile phones, USB drives, external hard drives, and other devices upon which information can be stored that are in her possession, custody, or control and were used during her employment with Bloom (together, the "Designated Devices"). Ridgeway shall also identify any personal email accounts, cloud storage accounts (e.g., Google Drive, iCloud), and social media accounts to which she had access during the period from April 1, 2025 (the approximate start of her employment), to October 6, 2025 (the date of her separation), and up to the date of this Agreement for purposes of investigating post-separation activity ("Designated Accounts"). Ridgeway shall provide the Expert with all information necessary to access data on the Designated Devices and Designated Accounts, including but not limited to email addresses, account names, passwords, login credentials, and decryption keys ("Designated Device and Account Access Information"). To minimize disruption, Ridgeway may retain possession of her primary mobile phone during the analysis, provided she attests that she will not access, delete, or alter any potentially relevant information during this period.

3. **Work Performed by Expert**. The Expert shall create forensic images or otherwise preserve all electronically stored information ("ESI") on the Designated Devices and Designated Accounts. A "Forensic Image" shall include active data, deleted data,

temporary files, swap or page files, metadata, transactional data, and any other data written to the media. The Expert shall retain forensic copies of the Designated Devices (except Ridgeway's primary mobile phone) until further agreement of the Parties. Ridgeway shall not access, delete, or alter any Bloom-related information on her devices during this period and shall attest at the conclusion of the process that she has not done so. All work shall be conducted in a manner that preserves the integrity of non-relevant data and minimizes privacy intrusions.

4. **Search Process**. The Expert shall conduct searches using only the search terms, hash values, and document identifiers listed in Attachment A ("Search Terms"), which are tailored to Bloom's specific allegations of misappropriation (e.g., client databases, marketing materials, training documents). Searches and reports shall be limited to items containing one or more Search Terms to avoid overbreadth. The Parties' counsel shall confer with the Expert on application of the Search Terms to ensure they are neither over- nor under-inclusive. Either Party may request a keyword hit count report to assess effectiveness. If a search is deemed over- or under-inclusive based on the hit count, the Parties shall meet and confer to modify it, but the Expert shall not perform modified searches without mutual written agreement. All searches shall exclude clearly personal or privileged information (e.g., health records, financial statements unrelated to Bloom, attorney-client communications) unless explicitly tied to a Search Term.

5. **Initial Report for Designated Devices**. For all Designated Devices (except mobile phones, addressed in Paragraph 7), the Expert shall search the forensic images and, within ten (10) calendar days of receiving the Designated Devices, provide an "Initial

Device Report" to both Parties simultaneously. This report shall include, but not be limited to:

- A listing of all analyzed devices.
- A "File Listing Report" for files with timestamps or metadata from April 1, 2025, onward, including metadata (e.g., file path, extension, timestamps, MD5 hash, owner/creator).
- A "Recent File Activity Report" showing accessed or opened files.
- A "Storage Media Report" detailing referenced external devices.
- A "File Transfer Report" evidencing data downloads or transfers. The report shall redact or segregate any personal, privileged, or unrelated information not matching Search Terms.

6. **Initial Report for Designated Accounts**. Within ten (10) calendar days of receiving Designated Account Access Information, the Expert shall provide an "Initial Account Report" to both Parties, including:
    - A "Message History Report" for emails and messages from April 1, 2025, onward, with header information (to/from, dates, subjects, attachments).
    - A "Cloud Account History Report" for files with relevant timestamps, including metadata. Personal or unrelated content shall be redacted or segregated.
7. **Initial Report for Mobile Phones**. Within ten (10) calendar days of receiving mobile phone data, the Expert shall provide an "Initial Mobile Report" including:
    - Device identifiers (make/model, serial number).
    - A "Call Report" for calls from April 1, 2025, onward.

- A "Message History Report" for texts and app messages, including headers and content matching Search Terms.
- A "Contact List Report," limited to contacts potentially related to Bloom. Sensitive personal communications (e.g., family, medical) shall be excluded unless directly matching Search Terms.

8. **Right of Ridgeway's Counsel to Review and Claw Back Personal Information**. Prior to disclosing any Initial Reports (from Paragraphs 5-7) to Bloom, the Expert shall provide them to Ridgeway's counsel for a fourteen (14) calendar day review period. Ridgeway's counsel may designate any files or data appearing to contain personal, privileged, or unrelated information (e.g., RidgewayHR business data, health records) for redaction or exclusion ("Protected Files"). If Protected Files overlap with Bloom information, counsel shall confer to resolve. The Expert shall redact or remove Protected Files before finalizing reports for Bloom.
9. **Additional Forensic Analysis**. Either Party may request further searches, but the requesting Party bears the full cost. Such searches shall follow the processes above. Upon reasonable notice, a Party may request access to forensic images for their own expert, subject to this Agreement's confidentiality provisions.
10. **Limited Access to Information**. All information obtained under this Agreement is solely for determining whether Ridgeway retained, used, or disseminated Bloom's confidential information. Access is limited to: (1) Ridgeway, (2) the Parties' attorneys, and (3) necessary IT professionals assisting counsel, all bound by confidentiality. No information shall be used for any other purpose, including litigation without further agreement or court order. Bloom agrees not to disclose or use any non-Bloom-related information

discovered. Violations may result in sanctions, including cost-shifting or exclusion of evidence.

11. **Designation and Deletion of Files**. a. Within twenty-one (21) calendar days of receiving the Initial Reports, Bloom may designate files for return or deletion ("Return List"), limited to those containing Bloom's confidential information. Ridgeway shall have fourteen (14) calendar days to object if files are personal, privileged, or non-proprietary. b. The Parties shall meet and confer in good faith to finalize the Return List. Within fourteen (14) calendar days thereafter, the Expert shall securely return or delete designated files, wipe unallocated space, and verify completion. Ridgeway shall provide the affidavit in Attachment B attesting no retention of Bloom information. The Expert shall then return Designated Devices to Ridgeway and destroy access credentials.

12. **Retention and Destruction of Imaged Copies**. The Expert shall retain forensic images until mutual agreement for destruction, with costs borne by the Party requesting retention. Upon destruction, the Expert shall verify to both Parties and delete all related data from its systems.

13. **Termination Clause**. Either Party may terminate this Agreement upon written notice if: (1) A material breach occurs and is not cured within ten (10) business days of written notice; (2) Formal litigation or arbitration is initiated regarding the subject matter of this Agreement; (3) The forensic expert determines that analysis cannot be completed within the agreed scope without compromising privacy protections. Effect of Termination: The forensic expert shall immediately cease all work, return or destroy all data collected, and certify destruction in writing to both Parties. Each Party remains responsible for costs incurred up to the termination date.

14. **General Release**. If the forensic analysis concludes that Ridgeway did not retain, use, or share Bloom's confidential information: Bloom shall execute a General Release discharging Ridgeway from any and all claims, demands, or causes of action related to alleged retention or misuse of Bloom's confidential information. The release shall be delivered within ten (10) business days of the expert's final report confirming no violations. This release does not waive claims unrelated to the subject matter of this Agreement.

15. **Governing Law and Dispute Resolution**. This Agreement shall be governed by Pennsylvania law. Disputes arising hereunder shall be resolved through expedited mediation before litigation.

16. **Entire Agreement**. This Agreement constitutes the entire understanding and supersedes prior agreements.

IN WITNESS WHEREOF, the Parties have executed this Agreement.

BLOOM GOLF PARTNERS

By: ______________________________

Printed Name: ______________________

Title: _____________________________

Date: _____________________________

RACHEL RIDGEWAY

Signature: ______________________________

Date: __________________________________

**Attachment A – Search Terms**

The following Search Terms are limited to Bloom's specific allegations (e.g., client database with 2,500 contacts, marketing materials, training documents, diversions to Ridgeway Coaching & Consulting or RidgewayHR). Searches shall use Boolean operators as needed to avoid overbreadth.

Keywords/Phrases:

1. "Bloom Golf Partners" OR "Bloom Golf" OR "Tyler Bloom"
2. "Client database" OR "contact list" OR "2,500 contacts" OR "prospect lists"
3. "Marketing materials" OR "proposals" OR "training materials" OR "strategic planning"
4. "Innis Arden" OR "Noyac Golf Club" OR "Whitford Country Club"
5. "Ridgeway Coaching & Consulting" AND (divert OR compete OR client)
6. "Commission payment" OR "Whitford commission"
7. "Fathom AI" OR "Google Meet" AND "9/23"
8. "CRM upload" OR "master database"

Hash Values/Document Identifiers (to be provided by Bloom if available, e.g., for the alleged spreadsheet):

- [Bloom to insert specific MD5 hashes or file names, subject to mutual agreement]

**Attachment B – Declaration**

SWORN DECLARATION

I, Rachel Ridgeway, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. I do not have in my possession any Bloom Golf Partners confidential or proprietary information (as alleged in Bloom's correspondence) that I am not entitled to retain, whether in hard copy or electronic form, including on my personal devices or accounts.
2. I have not used or accessed any such Bloom information post-separation except as required for this process.
3. Should I discover any Bloom information after signing this Declaration, I will immediately notify Bloom's counsel and return it without retaining copies.

Executed this __ day of ________________, 2025, in ______________________________.

**Anthony Pinnie**

| | |
|---|---|
| **From:** | Anthony Pinnie <apinnie@schusterlaw.com> |
| **Sent:** | Wednesday, December 10, 2025 11:42 AM |
| **To:** | Joshua Voss; Anthony S. Pinnie |
| **Cc:** | Laura Gallagher; Rory O. Connaughton |
| **Subject:** | RE: Forensic Examination [IMAN-ACTIVE.FID542841] |

Dear Josh:

The client is still interested an expedited mediation. However, she does not want to trust her personal devices to a non-neutral party as she is fearful that something could be planted on her phone. She would however agree to an independent third party, as outlined in the suggested protocol. Also, when is your client going to send Mrs. Ridgeway her commissions for the Whitford Country Club assignment? There is a previous email stating that it was going to be paid several weeks ago. Thank you and please let me know. Very truly yours, Tony Pinnie

Anthony S. Pinnie, Esquire
Pinnie Law Offices
334 W. Front St.
Media, Pa. 19063
Office 610-892-9200
Cell 610-348-8242
www.pinnielaw.com
*Licensed PA, NJ, DC

**From:** Joshua Voss <jvoss@saxtonstump.com>
**Sent:** Wednesday, December 10, 2025 9:39 AM
**To:** Anthony Pinnie <apinnie@schusterlaw.com>; Anthony S. Pinnie <apinnie@pinnielaw.com>
**Cc:** Laura Gallagher <lgallagher@saxtonstump.com>; Rory O. Connaughton <RConnaughton@saxtonstump.com>
**Subject:** RE: Forensic Examination [IMAN-ACTIVE.FID542841]

Anthony,

Any update from your client on our two outstanding requests? 1. Review of her devices. 2. Expedited mediation.

Thanks.

Regards,

Josh

**Joshua Voss** | Shareholder
SAXTON & STUMP
LAWYERS AND CONSULTANTS

DEFENDANT'S EXHIBIT C

280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Phone: 717.556.1072 | Internal: 1072
Fax: 717.441.3810
jvoss@saxtonstump.com
www.saxtonstump.com

**From:** Anthony Pinnie <apinnie@schusterlaw.com>
**Sent:** Monday, December 8, 2025 1:16 PM
**To:** Rory O. Connaughton <RConnaughton@saxtonstump.com>; Joshua Voss <jvoss@saxtonstump.com>; Anthony S. Pinnie <apinnie@pinnielaw.com>
**Cc:** Laura Gallagher <lgallagher@saxtonstump.com>
**Subject:** RE: Forensic Examination

Got it, thanks.

Anthony S. Pinnie, Esquire
Pinnie Law Offices
334 W. Front St.
Media, Pa. 19063
Office 610-892-9200
Cell 610-348-8242
www.pinnielaw.com
*Licensed PA, NJ, DC

**From:** Rory O. Connaughton <RConnaughton@saxtonstump.com>
**Sent:** Monday, December 8, 2025 1:12 PM
**To:** Anthony Pinnie <apinnie@schusterlaw.com>; Joshua Voss <jvoss@saxtonstump.com>; Anthony S. Pinnie <apinnie@pinnielaw.com>
**Cc:** Laura Gallagher <lgallagher@saxtonstump.com>
**Subject:** RE: Forensic Examination

It is Bit x Bit.
Digital Forensics and eDiscovery from bit-x-bit

**Rory O. Connaughton** | Shareholder
SAXTON & STUMP
LAWYERS AND CONSULTANTS
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Phone: 717.669.7619 | Internal: 1054
Fax: 717.441.3810
rconnaughton@saxtonstump.com

www.saxtonstump.com

**From:** Anthony Pinnie <apinnie@schusterlaw.com>
**Sent:** Monday, December 8, 2025 12:49 PM
**To:** Joshua Voss <jvoss@saxtonstump.com>; Anthony S. Pinnie <apinnie@pinnielaw.com>
**Cc:** Rory O. Connaughton <RConnaughton@saxtonstump.com>; Laura Gallagher <lgallagher@saxtonstump.com>
**Subject:** RE: Forensic Examination [IMAN-ACTIVE.FID542841]

Thank you. I'll discuss this with the client. What is the name of you selected expert? Very truly yours, Anthony S. Pinnie, Esquire

Anthony S. Pinnie, Esquire
Pinnie Law Offices
334 W. Front St.
Media, Pa. 19063
Office 610-892-9200
Cell 610-348-8242
www.pinnielaw.com
*Licensed PA, NJ, DC

**From:** Joshua Voss <jvoss@saxtonstump.com>
**Sent:** Monday, December 8, 2025 12:17 PM
**To:** Anthony Pinnie <apinnie@schusterlaw.com>; Anthony S. Pinnie <apinnie@pinnielaw.com>
**Cc:** Rory O. Connaughton <RConnaughton@saxtonstump.com>; Laura Gallagher <lgallagher@saxtonstump.com>
**Subject:** RE: Forensic Examination [IMAN-ACTIVE.FID542841]

I can't tell if your second question is merely rhetorical, but I'll respond as if you genuinely asked why our client would like to know what your client still has and what she did/is doing with it. To that end: what she accessed and deleted is largely known (our investigation remains ongoing)—what she did with the files we do not know; hence why we need to examine the physical devices and electronic accounts in her exclusive control.

Using an expression from your email the other day, "let's dispense with the formalities." Your client deleted large swaths of information from the shared drives and factory reset her laptop. Deleting company files on a shared drive and factory-resetting a company laptop on her way out the door are not reasonable or lawful acts by your client. These acts are also easily provable. Let's jump to the end here and save the cost, burden, and expense in the middle.

Josh

**Joshua Voss** | Shareholder
SAXTON & STUMP
LAWYERS AND CONSULTANTS

280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Phone: 717.556.1072 | Internal: 1072
Fax: 717.441.3810
jvoss@saxtonstump.com
www.saxtonstump.com

**From:** Anthony Pinnie <apinnie@schusterlaw.com>
**Sent:** Monday, December 8, 2025 11:56 AM
**To:** Joshua Voss <jvoss@saxtonstump.com>; Anthony S. Pinnie <apinnie@pinnielaw.com>
**Cc:** Rory O. Connaughton <RConnaughton@saxtonstump.com>; Laura Gallagher <lgallagher@saxtonstump.com>
**Subject:** RE: Forensic Examination [IMAN-ACTIVE.FID542841]

Josh:

Initially, I will ask the client and I would also need to know the name of your proposed expert. Send that along. Second, If you already know the answers to the questions, why do you need to a second analysis? I will let you know what the client's decides. Very truly yours, Anthony S. Pinnie, Esquire

Anthony S. Pinnie, Esquire
Pinnie Law Offices
334 W. Front St.
Media, Pa. 19063
Office 610-892-9200
Cell 610-348-8242
www.pinnielaw.com
*Licensed PA, NJ, DC

**From:** Joshua Voss <jvoss@saxtonstump.com>
**Sent:** Monday, December 8, 2025 11:35 AM
**To:** Anthony Pinnie <apinnie@schusterlaw.com>; Anthony S. Pinnie <apinnie@pinnielaw.com>
**Cc:** Rory O. Connaughton <RConnaughton@saxtonstump.com>; Laura Gallagher <lgallagher@saxtonstump.com>
**Subject:** RE: Forensic Examination [IMAN-ACTIVE.FID542841]

Mr. Pinnie,

Thank you for sending this protocol for our consideration. Before we submit any proposed redlines, we want to notify you about a structural change to the protocol that we would require, which, if your client cannot agree to it, will obviate the need for redlines. Specifically, we will need her devices submitted to an expert of our choosing, who is in our sole employ. Regarding protections for confidential items (health records, for example) and privileged communications, we are amendable to terms around those issues, but we need the devices supplied to our expert for examination under terms and conditions of our choosing. Please advise if your client will agree to this fundamental change to the protocol; if she does,

then we will circulate redlines to the draft. If she does not, however, we don't have interest in the structure in your original protocol.

For avoidance of doubt about why we are demanding this structure, let me be clear on what we know now. We have had the laptop your client used forensically examined. We had the company's shared Google folders forensically examined. As a result, we do not *believe* she accessed and deleted valuable company files, we *know* she did so. Thus, our concerns about her accessing and destroying files are not allegations. This underscores our skepticism about a protocol that puts her in significant control of what we can and cannot review.

Regards,

Josh

**Joshua Voss** | Shareholder
SAXTON & STUMP
LAWYERS AND CONSULTANTS
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Phone: 717.556.1072 | Internal: 1072
Fax: 717.441.3810
jvoss@saxtonstump.com
www.saxtonstump.com

**From:** Anthony Pinnie <apinnie@schusterlaw.com>
**Sent:** Sunday, December 7, 2025 5:23 PM
**To:** Rory O. Connaughton <RConnaughton@saxtonstump.com>; Joshua Voss <jvoss@saxtonstump.com>; Laura Gallagher <lgallagher@saxtonstump.com>; Anthony S. Pinnie <apinnie@pinnielaw.com>
**Subject:** Forensic Examination

See the attached. Very truly yours, Anthony S. Pinnie, Esquire

Anthony S. Pinnie, Esquire
Pinnie Law Offices
334 W. Front St.
Media, Pa. 19063
Office 610-892-9200
Cell 610-348-8242
www.pinnielaw.com
(Sent from my iPhone)